**Matthew S. PETRI, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 11–155C.**

United States Court of Federal Claims.

Filed: May 18, 2012.

Redacted Version Issued for Publication: May 24, 2012.[1]

---

1. This opinion was issued under seal on May 18, 2012. The parties were asked to propose redactions prior to public release of the opinion. The parties proposed joint redactions. After review by the court, this opinion is issued with the parties' proposed redactions. Where words have been redacted, it is reflected in the text of the opinion with the word "[deleted]."

Jason Perry, Law Office of Jason Perry, Cheshire, CT, for the plaintiff.

Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Brian M. Simkin, Assistant Director, and Jeanne E. Davidson, Director, Commer-

cial Litigation Branch. John Goehring, Captain, Air Force Civil Litigation, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Plaintiff Matthew S. Petri was a Captain in the Minnesota Air National Guard, who was activated into the United States Air Force, until he was separated from active duty on March 13, 2006, due to post-traumatic stress disorder (PTSD). Mr. Petri argues that the Air Force acted improperly in the administration and effectuation of his separation. Mr. Petri seeks (1) all pay and allowances allegedly wrongfully denied him and continuation of such pay until a final review and determination as to his physical disability is made by the Secretary of the Air Force, (2) reimbursement for all medical expenses he has incurred since his separation from the Air Force, (3) injunctive and/or declaratory relief, (4) costs and attorney's fees, and (5) any further relief the court deems proper. The government filed a motion for judgment upon the Administrative Record,[2] arguing that the decision of the Physical Disability Board of Review, issued on September 17, 2010, was proper. The 2010 Physical Disability Board of Review recommended that Mr. Petri's record be corrected "to reflect that upon separation the covered individual was placed on the Temporary Disability Retired List with a disability rating of 50% for a period of six (6) months (IAW VASRD § 4.129)[3] and upon final disposition, received a combined disability rating of 10%."[4] Mr.

Petri filed a cross-motion for judgment upon the Administrative Record.

According to Mr. Petri, he enlisted in the Minnesota Air National Guard on April 12, 1995, and served as an aircraft electrical and environmental systems specialist. In 2000, Mr. Petri applied for the Air Force's Specialized Undergraduate Pilot Training Program, and was accepted. Mr. Petri showed signs of a psychiatric disorder during the pilot training in 2002. Mr. Petri alleges that, during training flights, some of his instructor pilots were verbally abusive toward him and made sudden and intense contact with his body, which caused him to suffer mental distress. Mr. Petri received therapy at the Life Skills Support Center at Laughlin Air Force Base in Texas, where he was stationed at the time, and was diagnosed with Acute Stress Disorder. Mr. Petri also was temporarily disqualified from pilot training. Thereafter, Mr. Petri was referred to a Medical Evaluation Board, which determined, on April 14, 2003, that Mr. Petri's stress disorder was resolved. The 2003 Medical Evaluation Board forwarded Mr. Petri's case to an Informal Physical Evaluation Board, which found Mr. Petri fit for duty on April 23, 2003. Mr. Petri was returned to duty by June 30, 2003 with no medical restrictions. Subsequently, he was put on active duty, with non-flying duties, from approximately May 17, 2004 through October 16, 2004. In 2005, Mr. Petri entered into another pilot training program at Columbus Air Force Base in Mississippi.

During August 2005, Mr. Petri made frequent visits to medical and Life Skills Support Center personnel at Columbus Air

---

**2.** The Administrative Record provided to the court was completely disorganized and not indexed. Even following the court's January 26, 2012 Order instructing the parties to reorganize, the record remains disorganized. Documents were difficult to find, sometimes repeated in the Amended Administrative Record without reason, and often not in chronological order.

**3.** IAW VASRD § 4.129 stands for "in accordance with Veterans Administration Schedule for Rating Disabilities," which is located at 38 C.F.R. § 4.129 (2010).

**4.** The United States Department of Veterans Affairs (VA's) ratings criteria under the Veterans Administration Schedule for Rating Disabilities

was considered by the 2010 Physical Disability Board of Review because, in 2008, the Under Secretary of Defense for the Department of Defense issued a policy memorandum to the Secretaries of the military departments, Chairman of the Joint Chiefs of Staff, General Counsel of the Department of Defense, and Inspector General of the Department of Defense, for the purpose of providing guidance on disability-related provisions of the National Defense Authorization Act of 2008, which directed the Physical Disability Board of Review to apply the Veterans Administration Schedule for Rating Disabilities, including Veterans Administration Schedule for Rating Disabilities § 4.129, which requires a temporary 50% disability rating, followed by an "examination" within six months of discharge.

Force Base complaining of anxiety, sleep issues, and stress. He had been referred to the Life Skills Support Center for "difficulty managing stress while in the jet" according to Captain William Hubbard, Chief of the Life Skills Support Center at Columbus Air Force Base. A review of Mr. Petri's medical records indicates that he spoke with Captain Hubbard no fewer than seven times in August 2005. On August 18, 2005, at a meeting with Captain Hubbard, Mr. Petri noted feelings of "intense fear, helplessness and terror." During their meetings, Mr. Petri explained to Captain Hubbard that [deleted], and that one of his instructor pilots, who he stated had been verbally and physically aggressive toward him, [deleted]. Mr. Petri noted that he was experiencing flashbacks of the instructor, and that while flying, he felt a lack of self-awareness with male instructor pilots who were verbally harsh. Captain Hubbard diagnosed Mr. Petri with PTSD, recommended plaintiff not return to flying, and that a Medical Evaluation Board "be explored." At a follow-up visit, on August 22, 2005, Mr. Petri's status was noted as, "DNIF [duty not involving flying] due to lack of sleep." The next day, Mr. Petri met with Captain Hubbard to discuss a Medical Evaluation Board.

On August 23, 2005, Mr. Petri completed a Life Skills Support Center Intake Assessment Interview. Under the section labeled, "Mood," Mr. Petri circled seven of the nine possible words provided to describe his mood over the prior two weeks, including, Sad, Anxious, Angry, Frustrated, Worried, Hopeless, and Helpless.[5] Under the section labeled, "Neurovegetative & Behavioral Symptoms," which directed Mr. Petri to circle words that had presented a problem for him in the prior month, Mr. Petri circled ten of fifteen possible words, including, Sleep, Enjoying Life, Motivation, Fatigue, Guilt, Poor Concentration, Appetite Change, Loss of Sex Drive, Racing Thoughts, and Periods of Very Low Energy.[6] Under the section labeled, "Physical Symptoms," Mr. Petri indicated that fifteen of twenty-three words had presented a problem for him in the prior month, including, Headaches, Muscle Tension, Sweating, Dizziness, Sexual Problems, Rapid Heart Beat, Trembling/Shaking, Heart Pounding, Diarrhea, Fatigue, Nausea, Choking Sensations, Vision Changes, Chills/Hot Flashes, and Stomach Aches.[7] Mr. Petri reported that he had a "miserable" childhood that contributed "somewhat" to his current problems, that he was very unsatisfied with his current occupation, that he was having difficulties engaging in leisurely activities, and that, at the time, he was not motivated to learn new ways to deal with his problems.

The same day that he completed the Life Skills Support Center Intake Assessment Interview, Mr. Petri filled out a standard psychiatric Outcome Questionnaire (OQ–45.2), which Dr. (Lieutenant Colonel) Jeffrey Weiser, described as a "general measure of mental health symptoms." The OQ–45.2 listed a series of 45 statements and permitted Mr. Petri to check mark one of the following boxes beside the statements: Never, Rarely, Sometimes, Frequently, or Almost Always. Mr. Petri checked the box Almost Always in response to seven statements indicating that he almost always felt stressed at work/school, enjoyed his spare time, had difficulty concentrating, was not working/studying as well as he used to, his heart pounded too much, he had sore muscles, and he felt he was not doing well at work/school. Mr. Petri checked the Never box five times, indicating that he never, had thoughts of ending his life, had disturbing thoughts he could not get rid of, felt annoyed by people who criticized his drinking or drug use, or had trouble at work/school because of drinking or drug use.[8] Mr.

---

5. Mr. Petri did not circle the words Happy or Calm and did not add any additional descriptive words in a blank line provided for that purpose.

6. Mr. Petri did not circle the words, Impulsiveness, Overtalkativeness, Poor Judgment, Strange Thoughts or Behavior, or Periods of Very High Energy.

7. Mr. Petri did not circle the words, Numbness, Chest Pains, Shortness of Breath, Tics/Twitches, Skin Problems, Mouth Muscle/Joint Pain, Muscle Spasms or Blackouts.

8. The instructions directed Mr. Petri to check the box Never if the questions regarding drinking and drug use were not applicable. Mr. Petri checked Rarely for, blaming himself for things, feeling unhappy in his marriage/relationship, feeling fearful, needing a drink after a night of heavy drinking to get going, finding work/school

Petri received a score of 86 on the OQ–45.2. The following month, in September 2005, Mr. Petri completed another OQ–45.2, receiving a score of 85. On his September 2005 OQ–45.2, Mr. Petri checked only three Almost Always boxes indicating that he almost always tired quickly, had sore muscles, and felt that he was not doing well at work/school. Mr. Petri checked nine Never boxes, indicating that he never, had thoughts of ending his life, needed a drink the next morning to get going, had frequent arguments, had disturbing thoughts he could not get rid of, felt annoyed by people who criticized his drinking or drug use, had trouble at work/school because of drinking or drug use, felt afraid of open spaces/driving/buses/subways, had too many disagreements at work/school, and felt angry enough at work/school he might do something he might regret.[9]

Thereafter, on September 26, 2005, Mr. Petri met with Dr. (Major) John Rians, Staff Psychologist at the Maxwell Air Force Base in Alabama, so that Dr. Rians could prepare a Narrative Summary for use by the Medical Evaluation Board. In his summary, Dr. Rians described the events to date, [deleted], the issues he was experiencing during flight training, and his current feelings of anxiety. Dr. Rians noted:

> Pt reports efforts to avoid thoughts and feeling [sic] associated with the trauma that have generalized to the SUPT [Student Undergraduate Pilot Training] environment. He expresses efforts to avoid people that arouse recollections of the trauma, specifically IPs [instructor pilots]. He has expressed a markedly diminished interest in participating with continuing to fly. He currently states that his primary feeling while in the flying environment is terror. He appears to have a restricted range of affect.... These symptoms had their onset during [deleted] and were essentially repressed until he began pilot training in 2002.... He is future oriented and is sure he will bounce back from this. He seemed irritated during the interview at Maxwell AFB [Air Force Base], until we started discussing disability options. On this topic he had many questions and had a different demeanor about him. Recently his symptoms have improved since getting off the flight line. He is social with others and is going out on the weekends to some degree. He is golfing on the weekends.

Dr. Rians further reported that Mr. Petri was well-groomed, his speech was of a normal rate and tone, he maintained adequate eye contact, his mood was normal, his affect full, and his judgment and insight were intact. A report signed by Dr. Rians on October 4, 2005, found that Mr. Petri "does not seem to be compatible with continued military service. He may get into a situation, which he cannot avoid or limit, which may trigger his symptoms again." Dr. Rians noted that Mr. Petri was able to limit triggering his symptoms in the civilian world by avoid-

---

satisfying, being happy, working/studying too much, being concerned about family troubles, feeling afraid of open spaces/driving/buses/subways, having too many disagreements at work/school, having headaches, feeling angry enough at work/school that he might do something he might regret, and feeling satisfied in his relationships with others. He indicated that he Sometimes got along well with others, felt worthless, felt lonely, felt loved and wanted, had trouble getting along with friends, was satisfied with his life, felt that something bad would happen, felt that something was wrong with his mind, had trouble sleeping, and felt blue. He indicated that he Frequently had no interest in things, felt stressed at work/school, felt irritated, felt weak, liked himself, felt hopeless about the future, had an upset stomach, felt nervous, and felt his love relationships were full and complete.

**9.** The instructions directed Mr. Petri to check the box Never if the questions regarding drinking and drug use were not applicable. He indicated he Rarely tired quickly, blamed himself for things, found work/school satisfying, was happy, worked/studied too much, was concerned about family troubles, felt lonely, was satisfied with his life, felt something was wrong with his mind, and felt satisfied with his relationships with others. Mr. Petri checked that he Sometimes felt unhappy in his marriage/relationship, felt weak, felt fearful, felt worthless, had an unfulfilling sex life, felt loved and wanted, felt hopeless about the future, liked himself, was not working/studying as well as he used to, his heart pounded too much, had trouble getting along with friends, felt that something bad would happen, felt that his relationships were full, and had headaches. He indicated that he Frequently felt no interest in things, felt stressed at work/school, felt irritated, enjoyed his spare time, had difficulty concentrating, had an upset stomach, felt nervous, had trouble falling asleep, and felt blue.

ing abrasive people, a tactic he was unable to use in the restricted world of flying school. Dr. Rians' notes indicate that Mr. Petri received a Global Assessment of Functioning Score of 71. A Global Assessment of Functioning Score of 70, by comparison, correlates with mild symptoms according to the Diagnostic Statistical Manual of Mental Disorders IV–TR.

On November 5, 2005, the Medical Evaluation Board met and found that Mr. Petri suffered from PTSD, which did not exist prior to military service, but which was incurred while entitled to basic pay in the military and which was permanently aggravated by military service. The 2005 Medical Evaluation Board referred Mr. Petri to an Informal Physical Evaluation Board. On December 9, 2005, the Informal Physical Evaluation Board convened and found contrary to the Medical Evaluation Board, that although Mr. Petri suffered from disabling PTSD, the condition existed prior to military service and was not permanently aggravated by military service, which meant that Mr. Petri was not eligible for severance pay or retirement benefits. Specifically, the 2005 Informal Physical Evaluation Board wrote:

> Capt Petri—Your medical condition, which existed prior to (activation/ tour start date), is considered to exist prior to service (EPTS), has not been permanently aggravated by military service, and is incompatible with the long term rigors of military service. The Board notes that you have had therapy in the past and seem to function quite well in the civilian sector. The Board also notes the [sic] your "... symptoms had their onset during [deleted] and were essentially repressed until he began pilot training in 2002." The onset of your condition was prior to entering military service. The Informal Physical Evaluation Board finds you unfit and recommends discharge under provisions other than Chapter 61, Title 10, U.S.C.

Mr. Petri appealed the decision of the 2005 Informal Physical Evaluation Board and requested a Formal Physical Evaluation Board. Mr. Petri sought consultations from Dr. Fred Drummond (a board certified civilian psychologist), Captain William Hubbard of the Life Skills Support Center, and Dr. (Lieutenant Colonel) Glen Nagasawa of the 14th Medical Group at Columbus Air Force Base, each of whom provided a memorandum to the Formal Physical Evaluation Board on behalf of Mr. Petri. In December 2005, Mr. Petri completed a Beck Depression Inventory— Second Edition, and Beck Anxiety Inventory, administered by Dr. Drummond. He scored "in the severe range for both anxiety and depression" on the two tests. Dr. Drummond concluded that Mr. Petri's PTSD did not exist prior to military service, that the PTSD was permanently aggravated by military service, that Mr. Petri's social and industrial functioning impairment was mild, and that he expected Mr. Petri's PTSD symptoms to fade when he returned to civilian life. Like Mr. Petri's previous Global Assessment of Functioning Score of 71 in September 2005, Dr. Drummond attributed to Mr. Petri a Global Assessment of Functioning Score of 70, which correlates to mild symptoms. Captain Hubbard, with whom Mr. Petri had consulted repeatedly at the Life Skills Support Center, prepared a memorandum to the Formal Physical Evaluation Board, in which Captain Hubbard indicated that Mr. Petri's PTSD had not existed prior to military service. Dr. Nagasawa similarly concluded that Mr. Petri's PTSD did not exist prior to military service. Dr. Nagasawa indicated, however, that his conclusion was based on a review of records, and that he had "no prior contact with the case."

The Formal Physical Evaluation Board met on January 30, 2006, determined that Mr. Petri's PTSD was service-connected, and recommended a 10% disability rating. No other medical conditions were referred to or considered by the 2006 Formal Physical Evaluation Board. The 2006 Formal Physical Evaluation Board stated: "After reviewing new evidence and the member's service medical record, the Board determined a hearing was not necessary." Following the 2006 Formal Physical Evaluation Board's findings, Mr. Petri filed an Air Force Form 1180, "Action on Physical Evaluation Board Findings and Recommended Disposition," initialing that he agreed with the 2006 Formal Physical Evaluation Board's conclusion of a 10% disability rating. On February 21,

2006, Mr. Petri filled out a "Report of Medical Assessment," which states on the face of the form that it is to be used for "service members separating or retiring from active service duty."

Thereafter, Mr. Petri continued to visit medical clinics, including on February 7, February 13, and February 21, 2006, complaining of physical pains, stress, and anxiety. On February 13, 2006, plaintiff again met with Captain Hubbard at the Life Skills Support Center. Mr. Petri completed a third OQ–45.2, receiving a score of 112, in contrast to his previous scores of 86 and 85 in August and September 2005, respectively. According to Dr. (Lieutenant Colonel) Jeffrey Weiser, who later prepared an opinion for the 2010 Physical Disability Board of Review concerning Mr. Petri, a score of 112 is "significantly elevated." On the February 13, 2006, OQ–45.2, Mr. Petri checked fourteen Almost Always boxes and three Never boxes. He indicated that he Almost Always tired quickly, felt no interest in things, felt fearful, worked/studied too much, had difficulty concentrating, felt hopeless about the future, had an upset stomach, was not working/studying as well as he used to, heart pounded too much, had sore muscles, felt

nervous, felt that he was not doing well at work/school, had trouble falling or staying asleep, and felt blue. Mr. Petri indicated that he Never found work/school satisfying, was a happy person, or was satisfied with his life.[10]

On February 24, 2006, Mr. Petri completed a fourth OQ–45.2, receiving a score of 105. Mr. Petri checked twelve Almost Always boxes and four Never boxes. In the Almost Always column, Mr. Petri checked that he Almost Always: tired quickly, felt stressed at work/school, felt irritated, enjoyed his spare time, had difficulty concentrating, was not working/studying as well as he used to, his heart pounded too much, had an upset stomach, had sore muscles, was not doing well at work/school, had trouble falling or staying asleep, and felt blue. In the Never column, Mr. Petri checked that he never, found work/school satisfying, was a happy person, worked/studied too much, and was satisfied with his life.[11]

On February 27, 2006, Mr. Petri again met with Captain Hubbard at the Life Skills Support Center, who noted that he had been approved for discharge from the Air Force. On March 3, 2006, Captain Hubbard prepared a discharge summary, indicating that

---

**10.** Mr. Petri also checked that he Rarely got along well with others, had thoughts of ending his life, felt worthless, enjoyed his spare time, liked himself, had disturbing thoughts he could not get rid of, and felt angry enough at work/school to do something he might regret. He indicated that he Sometimes blamed himself for things, felt lonely, had frequent arguments, felt loved and wanted, had trouble getting along with friends, and felt that something bad would happen. He checked that he Frequently felt stressed at work/school, felt irritated, felt weak, felt afraid of open spaces/driving/buses/subways, felt that something was wrong with his mind, felt satisfied in his relationships with others, and had headaches. He did not check a box beside the statements, "I feel unhappy in my marriage/significant relationship," "[a]fter heavy drinking, I need a drink the next morning to get going," "I am concerned about family troubles," "I have an unfulfilling sex life," "I feel annoyed by people who criticize my drinking (or drug use)," "I have trouble at work/school because of drinking or drug use," "I feel my love relationships are full and complete," or "I have too many disagreements at work/school."

**11.** Mr. Petri checked that he Rarely had thoughts of ending his life, was concerned about family troubles, felt lonely, had frequent arguments, felt

loved and wanted, had disturbing thoughts he could not get rid of, and was satisfied in his relationships with others. He checked that he Sometimes got along well with others, blamed himself for things, felt worthless, liked himself, felt that something bad would happen, had too many disagreements at work/school, and felt that something was wrong with his mind. He checked that he Frequently felt no interest in things, felt weak, felt fearful, felt hopeless about the future, had trouble getting along with friends and close acquaintances, felt nervous, and had headaches. For the statement, "I feel afraid of open spaces, of driving, or being on buses, subways, and so forth," Mr. Petri checked, "Frequently," and wrote in the words "other people," indicating he frequently felt afraid of other people. He did not check a box beside the statements, "[a]fter heavy drinking, I need a drink the next morning to get going," "I have an unfulfilling sex life," "I feel annoyed by people who criticize my drinking (or drug use)," "I have trouble at work/school because of drinking or drug use," "I feel my love relationships are full and complete," or "I feel angry enough at work/school to do something I might regret."

Mr. Petri's "current diagnosis of Chronic PTSD presents him with a serious employment handicap." Additionally, Captain Hubbard indicated Mr. Petri "is experiencing social impairment.... His ability to function effectively in a social setting is borderline. Client has the ability to function in settings where he is familiar and has a relationship [sic] others in the room." Captain Hubbard also noted that Mr. Petri "displayed a normal mood. The patient's speech had a normal rate and tone. There was no evidence of a thought disorder." In his discharge summary, Captain Hubbard gave Mr. Petri a Global Assessment of Functioning Score of 55, which, according to Dr. Weiser, who prepared an opinion for the 2010 Physical Disability Board of Review, is within "the moderate range of symptoms."

On March 13, 2006, Mr. Petri was separated from active duty due to his PTSD. About four months later, on July 17, 2006, he filed a disability claim with the VA. The VA issued a decision on March 27, 2007, rating Mr. Petri's PTSD at 50%, lumbosacral spine syndrome at 20%, and tinnitus at 10%, each with the effective date of March 14, 2006. The VA took into consideration several pieces of evidence, including a September 27, 2006, VA psychological examination administered to Mr. Petri about six months after his separation, by Dr. Gary Fischler, Ph.D., LP. In a letter stamped April 22, 2008, the VA approved a 10% rating for irritable bowel syndrome, and issued a combined rating of 70%.[12]

The examining VA psychologist provided a lengthy report in 2006 about Mr. Petri's mental issues. Among other details of the 2006 report, the examiner described Mr. Petri's self-reported isolation from youth to adulthood, his irritation with co-workers, bosses, and employees throughout his employment history, and [deleted]. Mr. Petri reported that he returned to work at the United Parcel Service in June 2006, working one to two hours a day, primarily for health benefits, and that he had yelled at coworkers and ignored his boss to avoid getting angry with him. To the VA psychologist, Mr. Petri also denied that he had any history of mental health treatment until 2001 at Laughlin Air Force Base.[13] In terms of appearance, the VA psychologist in his 2006 report indicated that Mr. Petri was disheveled, with messy hair, and a several day beard growth.

The VA psychologist further stated:

His pants appeared to be pajama bottoms. His shoes were covered with paint spots. His eye contact was poor. His speech and gait were within normal limits. He was cooperative, although guarded. His observed affect was flat. He tended to talk in jargon. He would reference his previous psychologist naming his symptoms, for example: "hypervigilance," and "dissociative state" .... He denies any symptoms of mental health problems prior to going to Laughlin Air Force Base.... He says that his depression has largely been related to realizing that he won't be able to fly anymore and this career option is gone....He feels hopeless about the future. He says his only pleasurable activity is drinking coffee and he appears to be anhedonic[14] .... He loses track of time sometimes. He will stare off into space sometimes.

Mr. Petri expressed to the psychologist that he thought about his [deleted] several times a week, mostly when he was awake at night, and that he avoided [deleted]. "The distress appears severe," the VA psychologist noted. After administering a Minnesota Multiphasic Personality Inventory—2, the VA psychologist indicated that Mr. Petri "en-

---

**12.** Adding together the disability ratings percentages determined by the VA, the total rating was 80%, but the VA explained: "Your overall or combined rating is 70%. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions."

**13.** Although Mr. Petri indicated to the VA psychologist that his history of mental health treatment in the military started in 2001, other of his records indicate his psychiatric disorder was first documented in the military in 2002.

**14.** Anhedonic is defined as "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." Merriam–Webster's Collegiate Dictionary 48 (11th ed. 2003).

dorsed more deviant items than most seriously disturbed psychiatric inpatients. Such a result is often obtained from individuals who are seeking help, sympathy, or benefits." The VA psychologist stated: "The profile should be considered invalid and should not be interpreted further." Similarly, on the Mississippi Scale for Combat Related Stress, which the psychologist stated was administered in error because Mr. Petri was not a combat veteran, Mr. Petri's score of 152 was "significantly above the average score for veterans with verified combat PTSD, and suggests that there is likely to be an over-endorsement of symptoms." In his conclusions, the psychologist stated:

Although Mr. Petri clearly has mental health problems, the validity of the conclusion of this examination is reduced due to a number of factors. As a result, there is some degree of uncertainty with regard to the nature and extent of Mr. Petri's mental health problems. This is due to a number of factors. First, the veteran over-endorsed items on the MMPI–2 [Minnesota Multiphasic Personality Inventory—2]. He described somewhat of a contentious [sic] relationship with the Air Force previously over benefits, and it is possible that he is attempting to make it more likely that he will obtain benefits in this manner. Second, he declined to discuss alcohol or drug use issues. It is possible that under some circumstances severe alcohol or drug abuse could be exacerbating his mental health problems or producing some of the symptoms that he described. Third, his presentation and history are somewhat atypical. [Deleted]. Taken as a whole, giving the veteran the benefit of the doubt, it appears at least as likely as not that he does suffer from delayed onset PTSD [deleted] and that his symptoms were substantially [sic] aggravated during his military service. The veteran also describes symptoms of major depression, [deleted].

The VA psychologist also indicated: "Mr. Petri's occupational functioning and social functioning appear severely impaired due to his PTSD symptoms. However, it is possible that his level of impairment is somewhat less severe due to his tendency to over-endorse symptoms. He appears capable of managing his own funds in his own interest." The psychologist issued Mr. Petri a Global Assessment of Functioning Score of 45.

On January 27, 2009, Mr. Petri applied to the Air Force Board for the Correction of Military Records, seeking a correction of his records to "include all medical conditions that existed at the time of my discharge ... lumbosacral strain syndrome rated at 20%, tinnitus rated at 10%, irritable bowel syndrome associated with post traumatic stress disorder [PTSD] rated at 10%, and oral lesions and oral scars rated at 0%." In his application, Mr. Petri wrote that he believed his record to be in error or unjust because "[m]y USAF [United States Air Force] medical records clearly show the previously mentioned conditions existed, were incurred during active duty, and were not properly documented on my medical separation papers...."

The Air Force Board for the Correction of Military Records responded to Mr. Petri's application on February 18, 2009, informing him that, alternatively, he could submit his application to the Physical Disability Board of Review, a new forum established under 10 U.S.C. § 1554(a) (2006) for the purpose of reassessing the combined disability ratings of service members discharged after September 11, 2001 as unfit for continued military service, who had a combined disability rating of 20% or less, and who were not eligible for retirement. The Air Force Board for the Correction of Military Records explained that Mr. Petri could choose to apply to either the Air Force Board for the Correction of Military Records or the Physical Disability Board of Review, but not both.

Mr. Petri chose to apply to the Physical Disability Board of Review for his records review. In addition to his completed application submitted to the Physical Disability Board of Review, Mr. Petri submitted a summary statement in a March 20, 2009, motion for review, through his attorney, Jason Perry. The summary states that Mr. Petri requested a disability rating of 50% due to PTSD and 20% due to a back condition, "for a combined rating of 60%," and placement on the Permanent Disability Retired List. Al-

though Mr. Petri did not specifically request consideration for tinnitus or irritable bowel syndrome in his Physical Disability Board of Review application, there were references to these conditions, and they were considered by the Physical Disability Board of Review.

The Physical Disability Board of Review issued a recommendation on September 17, 2010. In its analysis, the 2010 Physical Disability Board of Review stated that in accordance with "DoDI [Department of Defense Instruction] 6040.44 and DOD [United States Department of Defense] guidance (which applies current VASRD [Veterans Administration Schedule for Rating Disabilities] § 4.129 to all Board cases), the Board is obligated to recommend a minimum 50% PTSD rating for a retroactive six month period of TDRL (Temporary Disability Retired List)." The 2010 Physical Disability Board of Review reported that "[t]he [Formal] PEB rating ... was derived from DoDI [Department of Defense Instruction] 1332.39 and preceded the promulgation of the National Defense Authorization Act (NDAA) 2008 mandate for DOD [United States Department of Defense] adherence to Veterans Administration Schedule for Rating Disabilities (VASRD) § 4.129." The 2010 Physical Disability Board of Review then considered Mr. Petri's records in light of the Veterans Administration Schedule for Rating Disabilities § 4.130 (2010) criteria, used to implement Veterans Administration Schedule for Rating Disabilities § 4.129 (2010), based on Mr. Petri's condition as of six months after his date of separation, specifically considering the VA's 2006 psychological examination administered at this six month point. The 2010 Physical Disability Board of Review had concerns with the 2006 examination, stating that the Physical Disability Board of Review would "remain adherent to § 4.130 standards as the measure of disability for its permanent rating recommendation, but exercises its prerogative to judiciously scrutinize the probative value and applicability of the evidence to which the § 4.130 criteria are applied."

Upon reviewing the record, the 2010 Physical Disability Board of Review recommended that plaintiff was entitled to a 10% permanent disability rating following the retroactive, six month Temporary Disability Retired List period. In arriving at its recommendation, the 2010 Physical Disability Board of Review indicated it considered the following documentary evidence: Mr. Petri's Service Treatment Records, his VA Treatment Records, and his application for review to the 2010 Physical Disability Board of Review. The 2010 Physical Disability Board of Review evaluated Mr. Petri's disorders and treatment, chronologically, beginning with his "first history of psychiatric disorder" in 2002, triggered, according to Mr. Petri, by the behavior of a certain instructor pilot [deleted]. The 2010 Physical Disability Board of Review noted that Mr. Petri was removed from flight training, underwent six months of therapy, and re-entered flight training after his stress disorder was found resolved by a Medical Evaluation Board, on April 14, 2003, and an Informal Physical Evaluation Board found him fit for active duty on April 23, 2003. The 2010 Physical Disability Board of Review then documented Mr. Petri's second Medical Evaluation Board of November 5, 2005, which followed another series of symptoms that had resulted in a diagnosis of PTSD by Captain Hubbard on August 15, 2005, and also documented ensuing Informal and Formal Physical Evaluation Boards on December 9, 2005 and January 30, 2006, respectively, ultimately resulting in the 2010 Physical Disability Board of Review's recommendation that Mr. Petri be separated with a 10% permanent disability rating.

The 2010 Physical Disability Board of Review noted an ambiguity with respect to the PTSD trigger and analyzed the types and onset times of plaintiff's reported symptoms. It noted that the PTSD diagnosis "was derived from the link between the new and prior Service stressors; i.e., IP's [instructor pilots] with a teaching style reminiscent of the more aggressive earlier instructor," but that "at the time of the second [2005] MEB psychiatric evaluation, multiple symptoms were endorsed that were not associated with the initial Service stressor at the time it occurred." The flashbacks which Mr. Petri reported to the second Medical Evaluation Board examiner in 2005 were linked to the first instructor pilot, [deleted], and "[o]ther than a startle reflex to loud noises, there was

no documentation of baseline PTSD-type symptoms outside the flight training environment." The 2010 Physical Disability Board of Review then reflected that, "[b]y the time of the [2006] VA psychiatric examination, however, the symptoms were constant and linked to the [deleted]." Furthermore, "[a]lthough the same PTSD symptoms were cited by the MEB [Medical Evaluation Board] and VA examiners, the intrusive memories, flashbacks, triggers and avoidance symptoms related to the VA examiner were linked to the [deleted]. The VA psychiatrist's opinion confirms that he would not have made a diagnosis of PTSD based on linkage of the symptoms with the Service stressor [the instructor pilot]." The 2010 Physical Disability Board of Review continued:

> The Board must therefore make a chain of increasingly tenuous concessions to arrive at the conclusion that a permanent Service disability rating can be fairly based on the severity of symptoms cited by the CI [covered individual] at six months after separation. It must first concede that [deleted] arose for the first time from the incidents in 2002, triggering the cascade to a final diagnosis of PTSD. Otherwise the EPTS [existed prior to service] adjudication by the IPEB would be more difficult to refute.... The Board must then concede that a completely resolved stress disorder evolved into a full blown PTSD condition two years later by virtue of less severe stressors, reminiscent of a more severe stressor which, in turn, was reminiscent of the definitive [deleted]. It must further accept the initial Service trauma as the *de facto* Criterion A stressor for the MEB's PTSD diagnosis, since all of the symptoms invoked in the narrative summary (NARSUM) to satisfy the DSM–IV [Diagnostic and Statistical Manual of Mental Disorders, fourth edition] diagnostic criteria for PTSD were directly linked to the first IP [instructor pilot] experience. Finally the Board must conclude that six months after separation the PTSD symptoms were now

attached [deleted] and concede that all of the psychiatric impairment remains attached to the Service disability rating.

The 2010 Physical Disability Board of Review further emphasized that, while its "default posture" was to accept the applicant's reports of the history and severity of his symptoms as factual evidence, it limited that acceptance in instances, such as this, in which medical provider notes questioned the accuracy of the patient's reports. For instance, the 2010 Physical Disability Board of Review pointed to uniform wording in the entries of five different clinicians which cited symptoms verbatim from the DSM–IV diagnostic criteria for PTSD, which the 2010 Physical Disability Board of Review stated, "raises the question of rehearsed symptoms." According to the 2010 Physical Disability Board of Review, while the symptoms could have been "paraphrased by the providers, that is not the usual form of documentation." Additionally, the 2010 Physical Disability Board of Review determined that the mental status examination in the NARSUM (Narrative Summary) from October 4, 2005, which noted that Mr. Petri seemed irritated until the examiner started discussing disability options, suggested that the examiner questioned Mr. Petri's sincerity. The 2010 Physical Disability Board of Review also showed concern about the differences in appearance Mr. Petri displayed at the 2006 VA psychological examination (disheveled and in pajama pants), as compared to that reported in the outpatient Medical Evaluation Board clinical notes and his final training report (well-groomed, appearance commensurate with rank).[15]

The 2010 Physical Disability Board of Review also took notice of the differences in Mr. Petri's behavior described in the late 2005 Medical Evaluation Board Narrative Summary, as compared to the early 2006 VA psychological report. For instance, the 2010 Physical Disability Board of Review consid-

---

**15.** The 2010 Physical Disability Board of Review does not identify what documents the Medical Evaluation Board clinical notes and final training report include, but the clinical notes may refer to the Narrative Summaries for the 2005 Medical Evaluation Board prepared October 4 and 24, 2005 by Dr. Rians in which he noted that Mr. Petri appeared well-groomed. The final training report may refer to an evaluator's report from the 41st Flight Training Squadron created on March 7, 2006.

ered that Mr. Petri told the VA psychologist that he had obsessive-compulsive issues, and that he was biting his nails during the examination, which the 2010 Physical Disability Board of Review described as new developments since the 2003 and 2005 Medical Evaluation Board examinations. Also, the 2010 Physical Disability Board of Review noted that Mr. Petri told the VA psychologist that he was socially withdrawn during the Medical Evaluation Board period, although, according to the Physical Disability Board of Review, the Medical Evaluation Board Narrative Summary documents that Mr. Petri's symptoms were getting better, and that he was golfing on the weekends. Additionally, the 2010 Physical Disability Board of Review noted that Mr. Petri offered "graphic accounts" of his [deleted] to the VA psychological examiner, which had not been previously documented. The 2010 Physical Disability Board of Review stated that, individually, the worsening of symptoms in the VA examinations could have been attributed to progression of Mr. Petri's psychiatric condition, but that, collectively, "they introduce another layer of probative value concern which the Board must deliberate."

As to the tests which Mr. Petri completed, the 2010 Physical Disability Board of Review observed that the high number of endorsed symptoms on the OQ–45.2 did not conform with the concurrent scores of the mental status examinations and the Global Assessment of Functioning Scores.[16] The 2010 Physical Disability Board of Review stated that the elevated depression and anxiety inventory scores in Dr. Drummond's report of December 23, 2005 (42 and 32—the "severe range"), "were disproportionately elevated compared to the more objective measures (MSE, GAF, factual performance)." In his December 23, 2005 report, Dr. Drummond assessed Mr. Petri a Global Assessment of Functioning Score of 70, which is in the mild range of symptoms. The 2010 Physical Disability Board of Review also called attention to the VA psychologist's note regarding Mr. Petri's high Minnesota Multiphasic Personality Inventory—2 score, which stated that Mr. Petri "endorsed more deviant items than most seriously disturbed psychiatric inpatients. Such a result is often obtained from individuals who are seeking help, sympathy, or benefits. The profile should be considered invalid and should not be interpreted further." The 2010 Physical Disability Board of Review concluded, "these observations raise concerns that can neither be concluded nor discounted."

Given the discrepancies in plaintiff's records, the 2010 Physical Disability Board of Review stated it could not "premise its permanent PTSD rating recommendation solely on inferring impairment at six months from the subjective and speculative evidence contained in the VA rating examination." The 2010 Physical Disability Board of Review, therefore, considered information available in other of the plaintiff's Service records. For instance, the 2010 Physical Disability Board of Review pointed to Mr. Petri's Global Assessment of Functioning Score of 55, in his last outpatient note, which correlates to moderate impairment, and his last training report which was assessed closely in time to the last outpatient note, and which documented good performance.[17] The last outpatient note also

---

**16.** The OQ–45.2 scores were 86 on August 13, 2005; 85 on September 12, 2005; 112 on February 13, 2006; and 105 on February 24, 2006. While there may have been other mental status examinations considered by the 2010 Physical Disability Board of Review, only two are explicitly identified. The mental status examination on September 26, 2005, stated that Mr. Petri was well-groomed, oriented to person, place, time, and situation, and had a normal speech rate and mood. The mental status examination on September 27, 2006, described Mr. Petri as disheveled and "anhedonic." The Global Assessment of Functioning Scores were 71 on September 26, 2005; 70 on December 23, 2005; 55 on March 3, 2006; and 45 on September 27, 2006. Although the 2010 Physical Disability Board of Review

characterizes the differences in the concurrent scores as not conforming to each other, it, rather, appears that the scores demonstrate an inconsistent and questionably rapid descent in mental health over a short period of time into 2006, which supports the 2006 VA psychologist's and the 2010 Physical Disability Board of Review's conclusions that Mr. Petri may have over-endorsed and exaggerated his symptoms.

**17.** The 2010 Physical Disability Board of Review does not identify the last outpatient note and last training report. From the Amended Administrative Record, it appears that the last outpatient note refers to a Life Skills Note of Captain Hubbard created on March 3, 2006, and the last

anticipated a "serious employment handicap" although Mr. Petri returned to his former United Parcel Service job soon after separation. Furthermore, the 2010 Physical Disability Board of Review concluded that "[t]here is nothing stated in the record which suggests that the CI [covered individual] was underemployed on the basis of psychiatric impairment." While the 2010 Physical Disability Board of Review considered Mr. Petri's report to the VA psychological examiner in 2006 that he had lost an interest in leisurely activities and was not close to anyone, the 2010 Physical Disability Board of Review stated, "[t]here is no documentation that the CI [covered individual] was intolerant of public places or that he was totally isolating at home." Moreover, the 2010 Physical Disability Board of Review stated the VA psychological examiner did not document many of the panic symptoms listed in the Medical Evaluation Board note.[18] The 2010 Physical Disability Board of Review pointed out the VA psychologist's Global Assessment of Functioning Score for Mr. Petri of 45, which denotes serious impairment, but stated that the "same reservations the examiner had expressed regarding the accuracy of the reported severity of symptoms," namely that Mr. Petri may have been over-endorsing, "would have been equally applicable to estimation of the GAF [Global Assessment of Functioning Score]. The estimated GAF [Global Assessment of Functioning Score] also would have been significantly lowered by an inference of personal neglect from the general appearance."

In reaching its final recommendation, the 2010 Physical Disability Board of Review considered whether Mr. Petri met the standards for a 50% rating under Veterans Administration Schedule for Rating Disabilities § 4.130, which required "occupational and social impairment with reduced reliability and productivity." The 2010 Physical Disability Board of Review concluded that "[a]lthough some degree of social impairment was estab-

lished, there is no convincing evidence that there was significant occupational impairment from PTSD," and that of the nine descriptors in the Veterans Administration Schedule for Rating Disabilities § 4.130, which serve "as examples for this level of impairment," Mr. Petri only related four of them to the VA psychologist. Furthermore, "[a]ll Board [Physical Disability Board of Review] members agreed that too much speculation was required to concede a 50% permanent rating recommendation in this case and that the balance of the evidence did not rationally support it." The 2010 Physical Disability Board of Review then considered a 30% rating, but "failed, on balance, to find adequate reasonable doubt favoring the CI [covered individual] in support of a recommendation" for a 30% rating, even after resolving as many conflicting opinions as possible in Mr. Petri's favor. Consequently, the 2010 Physical Disability Board of Review recommended that Mr. Petri's records be retroactively corrected to reflect that, although upon separation he was retroactively given a 50% disability rating for six months on the Temporary Disability Retired List, thereafter, he was awarded a permanent disability rating of 10%. The 2010 Physical Disability Board of Review concluded that Mr. Petri was not entitled to a disability rating for tinnitus, and that the Physical Disability Board of Review did not have the jurisdiction to consider plaintiff's claims for disability based on the back condition or irritable bowel syndrome. The 2010 Physical Disability Board of Review stated: "The Board recommends therefore that the lumbar condition remain eligible for an appeal to the Air Force Board of Correction for Military Records (BCMR). Barring new or currently unavailable evidence, however, there would be little to support a finding that it was unfitting at separation." The irritable bowel syndrome condition also was not eligible for consideration before the 2010 Physical Disability Board of Review, and the Board

---

training report appears to refer to an evaluator's report from the 41st Flight Training Squadron created on March 7, 2006, which covers the period May 23, 2005, through March 2, 2006.

**18.** The 2010 Physical Disability Board of Review does not explain which document is the "Medical Evaluation Board note," but the Board could be referring to Dr. Rians Narrative Summary for the Medical Evaluation Board of October 4, 2005 or October 24, 2005.

found that it too "remains eligible for BCMR consideration." [19]

Subsequently, Mr. Petri filed suit in this court seeking pay that, allegedly, was wrongfully denied, medical costs, injunctive and/or declaratory relief, costs, attorney's fees, and such further relief as the court deems proper. The parties have filed cross-motions for judgment on the Administrative Record.

## DISCUSSION

■ The court reviews the 2010 Physical Disability Board of Review's decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed.Cir.) (citing *Martinez v. United States*, 333 F.3d 1295, 1305, 1314 (Fed.Cir.2003), *cert. denied*, 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004)), *reh'g en banc denied* (2006), *cert. denied*, 552 U.S. 810, 128 S.Ct. 42, 169 L.Ed.2d 11 (2007); *see also Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence."); *Metz v. United States*, 466 F.3d 991, 998 (Fed.Cir.2006), *reh'g en banc denied* (2006); *Porter v. United States*, 163 F.3d 1304, 1312 (Fed.Cir.1998), *reh'g denied, en banc suggestion declined* (Fed. Cir.), *cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *Skinner v. United States*, 219 Ct.Cl. 322, 331, 594 F.2d 824, 830 (1979); *Riser v. United States*, 97 Fed.Cl. 679, 683–84 (2011) (the court noted that plaintiff must show that the decision by the Army Board for Correction of Military Records was arbitrary and capricious, contrary to law, or unsupported by substantial evidence, and that, in accordance with this deferential standard of review, the court does not reweigh the evidence, "but rather considers 'whether *the conclusion being reviewed* is supported by substantial evidence.' *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983). So long as the Board consid-

ered the relevant evidence and came to a reasonable conclusion, this court will not disturb the Board's decision.") (emphasis in original; other citations omitted).

■ This standard of review is narrow. The court does not sit as "a super correction board." *Skinner v. United States*, 219 Ct.Cl. at 331, 594 F.2d at 830. Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed.Cir.), *reh'g denied* (Fed. Cir. 1993).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 [67 S.Ct. 1575, 91 L.Ed. 1995] (1947) [*reh'g denied* and *reh'g denied sub nom. SEC v. Fed. Water & Gas Corp.* (1947)]. We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. [281,] 286, 95 S.Ct. 438, 42 L.Ed.2d 447 [ (1974) ]. *See also Camp v. Pitts*, 411 U.S. 138, 142–143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam).

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43–44, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (other citations omitted); *see also Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438,

---

**19.** In an Order dated September 8, 2011, on plaintiff's motion, the court dismissed, without prejudice, plaintiff's claims associated with irritable bowel syndrome and back disabilities be-

cause neither claim had been reviewed by either a Physical Evaluation Board or an Administrative Review Board.

42 L.Ed.2d 447 (1974) ("The agency must articulate a 'rational connection between the facts found and the choice made.' While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citations omitted), *reh'g denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975). As a Judge of the United States Court of Federal Claims explained in *Verbeck v. United States:*

> The court's review in these matters is thus limited in scope and deferential in nature. Ms. Verbeck must show that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed.Cir.2005) [*cert. denied*, 546 U.S. 1066, 126 S.Ct. 807, 163 L.Ed.2d 635 (2005)]; *Godwin v. United States*, 338 F.3d 1374, 1378 (Fed.Cir.2003); *Heisig [v. United States]*, 719 F.2d [1153, 1156 (Fed.Cir.1983)].... The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'" *Dickinson v. Zurko*, 527 U.S. 150, 162, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (quoting *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Similarly, the arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir.2000) [*reh'g denied* (2000)].

> In sum, the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it. *See Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."); *Van Cleave v. United States*, 70 Fed.Cl. 674, 678–79 (2006) (While the court does not "serve as a 'super correction board[,]' *Skinner v. United States*, [594 F.2d 824, 830 (Ct.Cl.1979)] ... correction boards must examine relevant data and articulate satisfactory explanations for their decisions.") (citations omitted). If the Board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" its decision runs afoul of even this lenient standard of review. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

*Verbeck v. United States*, 97 Fed.Cl. 443, 451 (2011) (second omission in original).

In this court, the parties identified the following three issues of law for resolution:

- Whether the Air Force wrongfully separated Mr. Petri by denying him a full and fair hearing prior to his separation from active duty, in violation of 10 U.S.C. § 1214 (2006), thereby entitling him to pay under 37 U.S.C. § 204 (2006).

- Whether the 2010 Physical Disability Board of Review acted in a manner that was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, by not providing Mr. Petri with a reexamination and formal hearing to which Mr. Petri claims he was entitled pursuant to Veterans Administration Schedule for Rating Disabilities § 4.129, 10 U.S.C. § 1214, Department of Defense Instruction 1332.38 (2006), and Air Force Instruction 36–3212 (2006).

- Whether the 2010 Physical Disability Board of Review's recommendation to award Mr. Petri a 10% permanent disability rating for Post Traumatic Stress Disorder was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.[20]

---

20. Plaintiff included an allegation, in his first amended complaint, that the Physical Disability Board of Review failed to provide Mr. Petri with certain requested documents in violation of 5

*Temporary Disability Retired List and Full and Fair Hearing*

Plaintiff alleges that in 2006, the Physical Evaluation Board should have placed him on the Temporary Disability Retired List, which plaintiff asserts would have afforded him a full and fair hearing under Veterans Administration Schedule for Rating Disabilities § 4.129.[21] Plaintiff also claims that he is entitled to active duty pay under 37 U.S.C. § 204 due to the Air Force's failure to provide him a full and fair hearing. According to plaintiff, in 2010, when Mr. Petri's records were retroactively corrected to reflect that he was placed on the Temporary Disability Retired List in 2006, he was entitled to a physical examination and hearing, which he did not receive. Plaintiff further argues that the 2010 Physical Disability Board of Review was not required to assign Mr. Petri a permanent disability rating six months after he was separated pursuant to Veterans Administration Schedule for Rating Disabilities § 4.129, which requires only an examination six months after the veteran is separated, not a permanent disability rating at that time. Plaintiff also contends that he was 100% disabled when he was separated, warranting retirement, after a full and fair hearing under 10 U.S.C. § 1201 (2006), and that he is entitled to at least 50% of his retired base bay until he is given a full and fair hearing.

In the government's amended motion for judgment on the Administrative Record, the government contends that the purpose of the 2010 Physical Disability Board of Review was to place Mr. Petri in the position he would have been in had he actually been on the Temporary Disability Retired List in 2006. Defendant asserts that the 2010 Physical Disability Board of Review was not required

to provide Mr. Petri a physical examination or full hearing in 2010 because an examination and hearing in 2010 could not have enabled the 2010 Physical Disability Board of Review to determine what Mr. Petri's permanent disability rating should have been six months after his March 13, 2006 separation. Defendant also contends that Air Force Instruction (AFI) 36–3212 and DoDI 1332.38 direct that the Veterans Administration Schedule for Rating Disabilities be used to determine military disability ratings, and "[t]he PDBR [Physical Disability Board of Review] has retroactively applied the VASRD [Veterans Administration Schedule for Rating Disabilities] to the facts of this case and corrected Mr. Petri's record accordingly." According to defendant, 10 U.S.C. § 1214 requires a full and fair hearing prior to a disability separation, however, "the PDBR could not have denied Mr. Petri a full and fair hearing prior to his separation because Mr. Petri was separated in 2006, years before he ever applied to the PDBR." In fact, defendant maintains, Mr. Petri received a Formal Physical Evaluation Board prior to his 2006 separation. In plaintiff's response, however, plaintiff states, "[t]he defendant argues that Mr. Petri had his full and fair hearing in 2006 when he was separated. However, we are not arguing about the 2006 PEB adjudication .... the PDBR was the board which separated Mr. Petri finally," which appears to be the reason that plaintiff is arguing he should have been examined and had a hearing in 2010. It is unclear from the Amended Administrative Record whether plaintiff had a hearing in 2006. The 2006 Formal Physical Evaluation Board appears to have determined it did not need to hold a hearing. Significantly, Mr. Petri also

U.S.C. § 552(a) (2006) (Privacy Act), 5 U.S.C. § 552 (2006) (Freedom of Information Act), 10 U.S.C. § 1556 (2006) and *Neal v. Sec'y*, 639 F.2d 1029 (3d Cir.1981). However, in a Joint Statement of Issues of Law and Fact subsequently submitted to the court, the parties indicated: Although the First Amended Complaint refers, in paragraph 44, to the Physical Disability Board of Review's alleged failure to provide Mr. Petri with certain documents in violation of the Privacy Act and the Freedom of Information Act, the parties agree that this Court does not possess jurisdiction to entertain Privacy Act and Freedom of Information Act claims.

Further, plaintiff states that he does not intend to pursue his Privacy Act and Freedom of Information Act Claims in this Court [the United States Court of Federal Claims]. Therefore, such claims are not included in the statement of issues of law.

21. Plaintiff does not explain whether he is referring to the Informal or Formal Physical Evaluation Board. A member can request a hearing at a Formal, but not an Informal, Physical Evaluation Board. *See* Department of Defense Instruction (DoDI) 1332.38 at E3.P.1.3.2–E3.P.1.3.3.

agreed, in writing, with the 2006 Formal Physical Evaluation Board's decision, which would include the selected procedures used to reach its decision.

Defendant also contends that Mr. Petri is claiming wrongful separation under the Military Pay Act, 37 U.S.C. § 204, "which entails that a service member who has been illegally or improperly separated from the service is deemed to have continued in active service until his legal separation," but that Mr. Petri, who was medically unfit to serve, could not have continued to serve, but for the wrongful separation. Defendant also points out that Mr. Petri waived his right to be placed on the Temporary Disability Retired List because he did not raise the issue before the Formal Physical Evaluation Board in 2006.

██ Contrary to plaintiff's allegations, it appears that in 2006, the Air Force was not required, by regulation, to place plaintiff on the Temporary Disability Retired List pursuant to Veterans Administration Schedule for Rating Disabilities § 4.129, before separating him from the Air Force in 2006. The VA regulation, Veterans Administration Schedule for Rating Disabilities § 4.129, was not applied to the Department of Defense until 2008. *See* Policy Memorandum on Implementing Disability–Related Provision of the National Defense Authorization Act of 2008, Oct. 14, 2008 (2008 Memorandum).[22] Even if Veterans Administration Schedule for Rating Disabilities § 4.129 had applied, the regulations did not require assignment to the Temporary Disability Retired List. Section 4.129 provides:

> When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and

schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

Veterans Administration Schedule for Rating Disabilities § 4.129.

DoDI 1332.38, paragraph E3.P6.1– E3.P6.1.1, states that:

> Service members shall be placed on the TDRL [Temporary Disability Retired List] when they would be qualified for permanent disability retirement but for the fact that the member's disability is not determined to be of a permanent nature and stable. A disability shall be considered unstable when the preponderance of medical evidence establishes that accepted medical principles indicate the severity of the condition will change within the next five years so as to result in an increase or decrease of the disability rating percentage or a finding of fit.

Plaintiff does not argue that his disability was unstable. In fact, he argues he was 100% disabled when he was separated. According to DoDI 1332.38, paragraph E3.P7.5.1, plaintiff also was not qualified for permanent disability retirement. DoDI 1332.38, paragraph E3.P7.5.1 states that a service member is entitled to permanent disability retirement:

> when the member is unfit for a permanent and stable compensable physical disability under the standards of this Instruction; and E3.P7.5.1.1. The member has at least 20 years of service computed under Section 1208 of reference (b) or E3.P7.5.1.2. The total disability rating is at least 30 percent under the VASRD [Veterans Administration Schedule for Rating Disabilities].

---

22. The 2008 Memorandum provided: "The Military Department Secretary concerned will abide by 10 USC 1216a and 38 CFR § 4.129, VASRD [Veterans Administration Schedule for Rating Disabilities] for disposition of Service members found unfit because of a mental disorder due to traumatic distress." A subsequent memorandum, DoDI Memorandum, July 17, 2009, "Requests for Correction of Military Records Relating to Disability Ratings for Post Traumatic Stress Disorder" (2009 Memorandum), stated:

"Policy Memorandum on Implementing Disability–Related Provisions of the National Defense Authorization Act for 2008 (Pub.L. 110–181), October 14, 2008, directed the application of VASRD [Veterans Administration Schedule for Rating Disabilities] section 4.129 to PTSD unfitting conditions, effective as of the date of enactment of that law, January 28, 2008." Therefore, prior to the enactment of the 2008 law, Veterans Administration Schedule for Rating Disabilities § 4.129 was not required to be applied.

Although the DoDI is not clear as to whether 20 years of service plus a 30% rating are required, or 20 years of service or a 30% rating, the statute at 10 U.S.C. § 1201 describes the qualifications for retirement as a service member with either 20 years of service or a 30% disability rating, or greater. *See* 10 U.S.C. § 1201. At the time Mr. Petri was separated in 2006, however, plaintiff had neither 20 years of service nor a 30% rating, and, therefore, was not eligible for the Temporary Disability Retired List, despite having been retroactively placed on the list for six months for purposes of reviewing his case, by the 2010 Physical Disability Board of Review.

Plaintiff also argues that under Veterans Administration Schedule for Rating Disabilities § 4.129 he was entitled to, but not afforded, a hearing prior to being separated in 2006 by the Formal Physical Evaluation Board. To the extent plaintiff is arguing that the Formal Physical Evaluation Board should have placed him on the Temporary Disability Retired List, pursuant to Veterans Administration Schedule for Rating Disabilities § 4.129, which would have triggered a hearing, Veterans Administration Schedule for Rating Disabilities § 4.129 was not applied as an alternative available to the Department of Defense until 2008, as indicated above. Furthermore, while service members appealing to the Formal Physical Evaluation Board in 2006 had the option to demand a formal hearing, *see* Air Force Instruction 36–3232, ¶ 3.39, in Mr. Petri's case, the 2006 Formal Physical Evaluation Board concluded a formal hearing was not necessary, and plaintiff, with the assistance of counsel, approved the 2006 Formal Physical Evaluation Board's recommendation stating: "I *AGREE* WITH THE FINDINGS AND RECOMMENDED DISPOSITION OF THE [2006] **FPEB.**" (emphasis in original).

Plaintiff also contends that in 2010, when the Physical Disability Board of Review recommended that his records be corrected retroactively to reflect that he had been placed on the Temporary Disability Retired List, he was entitled to, but did not receive, a physical examination and hearing. Plaintiff argues that, "under both statute (10 U.S.C. § 1214) and regulation (AFI 36–3212, ¶ 7.12),

prior to separation off of the TDRL [Temporary Disability Retired List] a member is required to have a full and fair hearing." The statute at 10 U.S.C. § 1214 states, "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." As to AFI 36–3212, paragraph 7.12, the instruction provides:

> HQ AFPC/DPPD [Headquarters, Air Force Personnel Center, Directorate of Personnel Program Management] refers reports of [a Temporary Disability Retired List] examination with prior medical records and allied papers to the IPEB [Informal Physical Evaluation Board] for evaluation as outlined in **Chapter 3.**

(emphasis in original).

The Temporary Disability Retired List examination to which paragraph 7.12 of AFI 36–3212 refers is discussed at paragraph 7.1 of AFI 36–3212:

> The law, 10 U.S.C. 1210, requires reexamination of all members on the TDRL at least once every 18 months to determine if there has been a change in the disability that resulted in their placement on the TDRL. These periodic examinations continue until final disposition or until the statutory period expires (currently 5 years) whichever is earlier.

Therefore, members on the Temporary Disability Retired List receive periodic examinations to determine if the reason for which they were placed on the Temporary Disability Retired List has changed, *see* AFI 36–3212, ¶ 7.9, and the results of the examination are sent to HQ AFPC/DPPD, *see* AFI 36–3212, ¶ 7.10.2, which refers the reports to an Informal Physical Evaluation Board. *See* AFI 36–3212, ¶ 7.12. The Informal Physical Evaluation Board may recommend retention or removal from the Temporary Disability Retired List, *see* AFI 36–3212, ¶ 7.15, and, if removal is recommended, the service member may request a Formal Physical Evaluation Board. *See id.* The Formal Physical Evaluation Board reviews the Temporary Disability Retired List examination, medical records and related documents and may refer the service member for tests and medical

workups. *See* AFI 36–3212, ¶ 7.16. HQ AFPC/DPPD can order a complete medical workup and formal hearing, if it believes it is in the service member's best interests. *See* AFI 36–3212, ¶ 7.17. The Formal Physical Evaluation Board then makes a recommendation, but HQ AFPC/DPPD announces the final disposition. *See* AFI 36–3212, ¶¶ 7.21–7.22.

Plaintiff contends that AFI 36–3212, along with Veterans Administration Schedule for Rating Disabilities § 4.129, 10 U.S.C. § 1214,[23] and DoDI 1332.38, require the Air Force to "re-examine ... medically" members placed on the Temporary Disability Retired List and that if the examination results in a disability rating of less than 30%, the member is entitled to a full and fair hearing. AFI 36–3212 and Veterans Administration Schedule for Rating Disabilities § 4.129, however, mention only that an examination is indicated, and do not state whether it must be a physical examination or can be an examination of medical records. AFI 36–3212, paragraph 7.1 requires "reexamination of all members on the TDRL at least once every 18 months...." As discussed above, Veterans Administration Schedule for Rating Disabilities § 4.129 provides that a service member who develops a mental disorder severe enough to bring about his release from military service shall receive:

> an evaluation of not less than 50 percent [at the time of discharge] and ... an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

In contrast, 10 U.S.C. § 1210(a) requires "[a] physical examination ... at least once every 18 months" of members on the Temporary Disability Retired List, and DoDI 1332.38, paragraph 5.5.5, requires the Secretaries of the Military Departments to ensure that the Temporary Disability Retired List "is managed to meet the requirements of 10 U.S.C. 1210 ... for timely periodic physical examinations...."

In plaintiff's view, in 2010, when his records were corrected to reflect that he had been placed retroactively on the Temporary Disability Retired List, the Air Force was required to give him an examination because that was when the retroactive action occurred, and, according to standard Temporary Disability Retired List procedure, plaintiff was entitled to a physical examination at least every 18 months while on the Temporary Disability Retired List. Plaintiff contends that in 2010 "[h]ad an examination been conducted, then the PDBR would not have been in the position of conducting its final determination based on the VA's September 27, 2007[sic] [24] psychiatric examination that it identified as having 'probative value concerns' over." Plaintiff also alleges that "[h]ad the PDBR just corrected his record to place Mr. Petri on the TDRL [Temporary Disability Retired List] without separating him after [sic] six months later, thereby allowing the PEB to conduct a later hearing, Mr. Petri would have been able to present this evidence that, at the time of his final separation, he was 100% disabled due to PTSD and should have been rated at that level."

Plaintiff misunderstands the role of the 2010 Physical Disability Board of Review. The Physical Disability Board of Review was established in 2008 "to reassess the accuracy and fairness of the combined disability ratings assigned Service members who were discharged as unfit ... with a combined disability rating of 20 percent or less and were not found eligible for retirement." *See* DoDI 6040.44, Enclosure 3, ¶ 1. The Physical Disability Board of Review is to "[r]eview the PEB record of findings and the combined disability rating decisions regarding the specifically military unfitting medical conditions with respect to the covered individual." *Id.* at ¶ 4(c). The Secretary of the Air Force must determine what information is required for reviews conducted by the Physical Disability Board of Review, which may include,

---

**23.** The court believes plaintiff intended to refer to 10 U.S.C. § 1210 (2006) rather than 10 U.S.C. § 1214. Section 1214 refers to hearings prior to separation, not examinations. Section 1210 refers to an examination.

**24.** The VA psychological evaluation was conducted in 2006, not 2007.

but are not limited to, medical records. *Id.* at ¶ 6(i). "Evidence to be reviewed by the PDBR will be primarily documentary in nature." *Id.* at ¶ 5(a)(1). The Physical Disability Board of Review can recommend: no modification, re-characterization of "separation" to "retirement for disability," modification upward of the disability rating, changing a fit determination to unfit, or issuing a new disability rating. *Id.* at ¶ 4(e). Curiously, DoDI 6040.44 does not state that the Physical Disability Board of Review can recommend retroactive placement on the Temporary Disability Retired List, although the 2010 Physical Disability Board of Review, in Mr. Petri's case, did so, and this action by the 2010 Physical Disability Board of Review was not disputed by plaintiff.

In 2008, the Under Secretary of Defense for the Department of Defense issued a policy memorandum to the Secretaries of the military departments, Chairman of the Joint Chiefs of Staff, General Counsel of the Department of Defense, and Inspector General of the Department of Defense, for the purpose of providing guidance on disability-related provisions of the National Defense Authorization Act of 2008, directing the Physical Disability Board of Review to apply the Veterans Administration Schedule for Rating Disabilities, including Veterans Administration Schedule for Rating Disabilities § 4.129, which requires a 50% disability rating followed by an examination within six months of discharge. The October 14, 2008 "Policy Memorandum on Implementing Disability–Related Provisions of the National Defense Authorization Act of 2008," provided that:

> The Military Department Secretary concerned will abide by 10 USC 1216a and 38 CFR 4.129, VASRD [Veterans Administration Schedule for Rating Disabilities] for disposition of Service members found unfit because of a mental disorder due to traumatic stress. When a mental disorder that develops on active duty as a result of a highly stressful event is severe enough to bring about release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the 6 month period following discharge to determine whether a change in rating and disposition is warranted. The disposition of Service members diagnosed with a mental disorder due to traumatic stress found to be an unfitting condition in the DES process will be as follows:

> E7.2.1. For members found unfit with a rating of 80% or greater for a permanent and stable condition (or conditions) not related to diagnosis of the mental disorder due to traumatic stress, the member will be permanently retired.

> E7.2.2 All other such members must be placed on the Temporary Disability Retirement List (TDRL) and re-evaluated within a timeframe that is not less than 90 days, but within 6 months, from the date of placement on the TDRL.

The 2008 Memorandum is unclear. Either it requires that service members found unfit due to traumatic stress be assigned a disability rating of not less than 50% for six months, followed by an examination to determine whether that rating should be changed in accordance with E7.2.1 and E7.2.2, or, it requires that following an initial evaluation, members found to have a rating of 79% or less are immediately placed on the Temporary Disability Retired List with a rating of not less than 50% pursuant to E7.2.2. The latter is the interpretation applied by the 2010 Physical Disability Board of Review in plaintiff's case, although, as addressed, DoDI 6040.44 does not list placement on the Temporary Disability Retired List as among the recommendations a Physical Disability Board of Review can make. The main paragraph of the 2008 Memorandum requires an examination within six months of discharge, and a six month period also is mentioned in E7.2.2. Subsection E7.2.1, however, does not discuss a six month examination or the Temporary Disability Retired List. Rather, E7.2.1 requires immediate, permanent retirement, which would indicate that the six month period in the main paragraph of the 2008 Memorandum is distinct from the processes described in E7.2.1 and E7.2.2. Moreover, the 2008 Memorandum is peculiar because it mandates Temporary Disability Retired List for certain disabled service members, even if those members were not otherwise eligible for placement on the Temporary Disability

Retired List because they did not meet the qualifications for the list, which include an unstable disability and other requirements that must be met for permanent disability retirement. *See* DoDI 1332.38, ¶ E3.P6.1–E3.P6.1.1.

In 2009, in response to the 2008 Memorandum, the Department of Defense issued another memorandum, noting that the 2008 Memorandum was ambiguous:

> October 14 memorandum [the 2008 Memorandum] . . . left unresolved the issue of considering section 4.129 in connection with case reviews conducted by the Physical Disability Board of Review (PDBR) or a Board for Correction of Military Records (BCMR).

> DoD Instruction 6040.44, "Lead DoD Component for the Physical Disability Board of Review," June 27, 2008 (incorporating change 1, June 2, 2009), directs the PDBR in reviewing prior disability ratings to disregard any Military Department guidelines that were inconsistent with the VASRD [Veterans Administration Schedule for Rating Disabilities] . . . . the PDBR has concluded that equity favors giving applicants the benefit of section 4.129.

DoDI Memorandum, July 17, 2009, "Requests for Correction of Military Records Relating to Disability Ratings for Post Traumatic Stress Disorder." Consequently, the Department of Defense directed that all Physical Disability Board of Reviews apply Veterans Administration Schedule for Rating Disabilities Section 4.129 by "assign[ing] a disability rating of not less than 50% for PTSD unfitting conditions for an initial period of six months following separation with subsequent fitness and PTSD ratings based on the applicable evidence." DoDI Memorandum, July 17, 2009, "Requests for Correction of Military Records Relating to Disability Ratings for Post Traumatic Stress Disorder." The 2009 Memorandum did not direct a physical examination be conducted or that the member be placed on the Temporary Disability Retired List.

Plaintiff argues that by basing the six month review on "applicable evidence," the language of the 2009 Memorandum conflicts with Veterans Administration Schedule for Rating Disabilities § 4.129, and violates the hearing requirement of 10 U.S.C. § 1214, because the 2009 Memorandum did not require a new medical examination or Formal Physical Evaluation Board. The regulation at Veterans Administration Schedule for Rating Disabilities § 4.129, however, did not require a physical examination; it stated only that members were to be assigned a 50% rating for six months, then re-examined. *See* Veterans Administration Schedule for Rating Disabilities § 4.129. And while 10 U.S.C. § 1214 required a hearing prior to separation, which could be satisfied by a Formal Physical Evaluation Board, Mr. Petri's Formal Physical Evaluation Board in 2006 concluded a hearing was not necessary, and plaintiff agreed, in writing, with the Formal Physical Evaluation Board's findings, and, consequently, that the process was proper.

Defendant points out that, "[t]he July 2009 policy is not inconsistent with the requirement to conduct examinations of members on the TDRL [Temporary Disability Retired List], as the policy did not actually place them on the TDRL, but instead corrected their records to reflect that they had been upon the TDRL." Defendant is correct that the Physical Disability Board of Review in 2010 did not place plaintiff on the Temporary Disability Retired List in 2010 in order to conduct a physical examination in 2010. Rather, in order to apply Department of Defense directives, the 2010 Physical Disability Board of Review corrected the information in Mr. Petri's records to reflect that he had been on the Temporary Disability Retired List in 2006, although at the time he would not have been eligible to be placed on the Temporary Disability Retired List for lack of meeting the qualifications required for permanent disability retirement.

In sum, neither of the Physical Evaluation Boards conducted in 2005 and 2006 were required to place Mr. Petri on the Temporary Disability Retired List upon separation or, therefore, to provide him with a physical examination or hearing prior to removal from the Temporary Disability Retired List. Additionally, the court finds that the 2010 Physical Disability Board of Review acted reasonably in recommending that Mr.

Petri be assigned a disability rating of 50% for six months and a permanent disability rating of 10% thereafter, without a hearing and without a new physical or mental examination in 2010. A 2010 examination and/or hearing would not have reflected Mr. Petri's state of health six months after his 2006 separation, the time period pertinent for the 2010 Physical Disability Board of Review's determination of a permanent disability rating for Mr. Petri. Although after the National Defense Authorization Act of 2008 was enacted, the Department of Defense allowed individuals such as Mr. Petri to choose to pursue their claims either to the Physical Disability Board of Review or to the Air Force Board for the Correction of Military Records, the retroactive application of the rules resulted in situations in which conducting physical examinations many years after the fact, in plaintiff's case four years, to determine physical or mental conditions at the time of separation, necessarily made dependency on record review critical to determining the state of a separated individual's physical or mental state.

### The 2010 Physical Disability Board of Review 10% Disability Rating

As a corrections review board, the role of the 2010 Physical Disability Board of Review was to review plaintiff's records and to place Mr. Petri in the position he would have been in, but for any errors which may have been committed by the Air Force at the time of his separation. *See Barnick v. United States,* 591 F.3d 1372, 1380 (Fed.Cir.2010) ("[I]t was appropriate for the Board to order Barnick's discharge date to be changed retroactively to January 25, 1998, as Barnick would still have been discharged at that time for physical disability even if his injury had been properly found ILOD [in line of duty]. The Board merely proceeded in such a manner as to best approximate, in its judgment, what would have occurred in 1998 but for the improper NLOD [not in line of duty] finding."); *see also Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.) ("The correction board is a civilian board, through which the Secretary of a military department 'may correct any military record ... when the Secretary considers it necessary to correct an

error or remove an injustice.' 10 U.S.C. § 1552(a)(1) (2000). The Secretary is obligated not only to properly determine the nature of any error or injustice, but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.' ") (citation omitted), *reh'g denied* (Fed. Cir. 2004); *Denton v. United States,* 204 Ct.Cl. 188, 199, 1974 WL 21682, at *6 (1974) ("10 U.S.C. § 1552 (1970) grants to the Secretary, acting through the Correction Board, the power to correct records when a correction is necessary to rectify an error or remove an injustice.") (footnote omitted), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975); *Kimmel v. United States,* 196 Ct.Cl. 579, 591, 1971 WL 17833, at *9 (1971) ("Section 1552 of Title 10 of the United States Code is remedial in nature. It empowers the Secretary, acting through the Correction Board, with discretionary authority to correct records in order to rectify an error or remove an injustice.... The injustice was removed by placing plaintiff in the same position he would have been [in] had no error been made. This was all that plaintiff was entitled to receive.") (citation omitted).

Plaintiff asserts that the 2010 Physical Disability Board of Review's recommendation of a 10% permanent disability rating was arbitrary, capricious, contrary to law, and not based on substantial evidence. Plaintiff argues that the 2010 Physical Disability Board of Review based its recommendation on speculations and conclusions not supported by the evidence. Plaintiff also contests the 2010 Physical Disability Board of Review's determination that there was no evidence indicating that Mr. Petri was under-employed, due to psychiatric impairment. Plaintiff insists that the 2010 Physical Disability Board of Review did not consider the VA psychologist's findings in 2006 that after his separation Mr. Petri only worked 1–2 hours per day, "yelled at co-workers," and that his psychologist increased his anti-depressant dosage in response to problems at work. Plaintiff also points to the discharge summary by Captain Hubbard, who observed, prior to Mr. Petri's separation, that Mr. Petri's "PTSD condition 'presents him with a serious employment handicap,' " and that Mr.

Petri would need re-education for other employment because he would not be able to fly.

Additionally, plaintiff contends that the 2010 Physical Disability Board of Review's conclusions as to Mr. Petri's social impairment were incorrect. Plaintiff asserts:

> [T]he VA examiner provided evidence concerning his loss of interest in recreational activities, his loss of intimacy and estrangement from family and others, his hypervigilance and heightened startle response, his flattened affect, and his anhedonic appearance. The Columbus LSSC [Life Skills Support Center] social worker noted that Mr. Petri tried to avoid people in both work and social settings, that he limited his social settings to nighttime when the number of people around him was diminished, that he reported feeling anxiety when having to socially interact with others, and that his ability to function effectively in social settings is borderline. The physician expressly stated that Mr. Petri "is experiencing social impairment." In spite of the medical evidence, the PDBR's ultimate response was that their suspicions concerning Mr. Petri's condition "can neither be concluded nor discounted."

Plaintiff further maintains that the 2010 Physical Disability Board of Review applied an incorrect standard for rating Mr. Petri's PTSD. Plaintiff alleges that the 2010 Physical Disability Board of Review applied a standard of "significant occupational impairment from PTSD," instead of the Veterans Administration Schedule for Rating Disabilities criteria for rating mental disorders, which provides for a standard of "[o]ccupational and social impairment with reduced reliability and productivity." Plaintiff alleges that the 2010 Physical Disability Board of Review further erred by using the Veterans Administration Schedule for Rating Disabilities § 4.130 as a checklist, rather than as an example of the types of issues that would support a specific percentage disability rating.

Plaintiff also argues that where "the evidence is in relative equipoise, the law dictates that the veteran must prevail," but that the 2010 Physical Disability Board of Review did not apply this "reasonable doubt" standard.

According to the plaintiff, the 2010 Physical Disability Board of Review also failed to give appropriate weight to the VA's rating determination of July 19, 2007, under DoDI 6040.44, which indicates that the 2010 Physical Disability Board of Review should take the VA rating into consideration, "particularly if the DVA [Department of Veterans Affairs] rating was awarded within 12 months of the Service member's separation." Plaintiff maintains that the 2010 Physical Disability Board of Review "refused to consider the VA's rating decision in issuing its own findings on the permanent rating for Mr. Petri's PTSD disability." Finally, plaintiff argues that the 2010 Physical Disability Board of Review failed to explain the basis for its recommendation.

In response, defendant contends that the 2010 Physical Disability Board of Review did not base its recommendation on speculation, but rather extensively analyzed the record before it, including discrepancies therein. As to plaintiff's social impairment, defendant maintains that the 2010 Physical Disability Board of Review weighed competing factors, such as the lack of documentation of Mr. Petri's intolerance of public places, hallucinations, extreme responses to triggers or home isolation, and his loss of interest in recreational activities and "anhedonic" appearance, ultimately making a determination that there was some social impairment. Additionally, defendant argues that the 2010 Physical Disability Board of Review's findings as to Mr. Petri's occupational impairment were reasonable because Mr. Petri reported that he was working 1–2 hours per day for the purpose of obtaining health benefits, and that he had not had disciplinary problems at work. Defendant states that the comments by Captain Hubbard in 2006 about Mr. Petri's PTSD possibly presenting future employment problems were made prior to separation and were related to flying, which did not demonstrate that he would incur impairment in new jobs, unrelated to flying. Defendant further argues that, as to Mr. Petri yelling at co-workers, the "annoyances at [Mr. Petri's] United Parcel Service job appear to be consistent with annoyances he

experienced in previous jobs prior to the onset of PTSD."

Defendant contends that the 2010 Physical Disability Board of Review applied the correct standard from the Veterans Administration Schedule for Rating Disabilities in rating Mr. Petri's PTSD. According to the defendant, the 2010 Physical Disability Board of Review acknowledged that the standard in determining the Veterans Administration Schedule for Rating Disabilities percentage of Mr. Petri's disability was one of reduced reliability and productivity, and that the 2010 Physical Disability Board of Review's conclusion, "[a]lthough some degree of social impairment was established, there is no convincing evidence that there was significant occupational impairment from PTSD," demonstrates the 2010 Physical Disability Board of Review's application of the proper standard and a careful review. Defendant also asserts that the 2010 Physical Disability Board of Review did not use Veterans Administration Schedule for Rating Disabilities § 4.130 as a checklist. Defendant further maintains that the 2010 Physical Disability Board of Review did resolve conflicting opinions in plaintiff's favor where possible, but that "[w]hen probative value concerns cast doubt on the evidence time and time again, as is the case here, Mr. Petri cannot reasonably claim that the evidence is 'in relative equipoise,' as he does here."

Additionally, defendant rejects plaintiff's assertion that the 2010 Physical Disability Board of Review did not give due deference to the 2007 VA rating decision, stating that the 2010 Physical Disability Board of Review gave "extraordinary consideration and a detailed written analysis of Mr. Petri's VA rating." Defendant remarks that:

The PDBR's decision to recommend [a 10% permanent disability] rating should be sustained because the board had a reasonable basis to conclude that the VA's psychiatric examination of Mr. Petri on September 27, 2006—upon which the VA rating of 50 percent disability for PTSD was based—was not the most reliable indicator of Mr. Petri's ratable disability as of that date, approximately six months after his separation.

Defendant insists that the 2010 Physical Disability Board of Review had good reason to question the reliability of the VA's 2006 psychological examination, given "Mr. Petri's apparent tendency on several occasions to report rehearsed symptoms to his examiners, the elevated levels on his psychiatric tests that caused the VA examiner and the PDBR [Physical Disability Board of Review] to question whether he was over-reporting and exaggerating his symptoms, and his incongruous disheveled personal appearance at his VA psychiatric examination on September 27, 2006." Finally, defendant argues that the 2010 Physical Disability Board of Review did explain the basis for its findings. According to defendant, the 2010 Physical Disability Board of Review included in its closing remarks the Board's resolution of conflicting opinions, and "[t]he preceding six single-spaced pages of the decision were devoted to explaining the board's thorough analysis of Mr. Petri's case."

■ Plaintiff contends that the 2010 Physical Disability Board of Review improperly speculated that the VA psychologist in 2006 would not have diagnosed Mr. Petri with PTSD, based on a connection between Mr. Petri's psychological symptoms and the service stressor, i.e., the abuse Mr. Petri suffered by the instructor pilots. The 2006 VA psychological report, however, reviewed by the 2010 Physical Disability Board of Review, stated:

Mr. Petri indicated that the most upsetting experience he had in the Air Force related to his flight instructor who yelled at him, called him names, and humiliated him. Once, he made fun of him on the radio for everyone else to hear. Once, he shoved Mr. Petri's helmet into the canopy of the cockpit. Although this incident is obviously upsetting, [deleted], the assault is not of sufficient intensity to meet Criterion A.

The VA psychologist concluded that Mr. Petri's [deleted], not the service stressor, i.e., the flight instructor's harassing behavior, met Criterion A, and that Criterions B–F were met by other factors unrelated to the

service stressor.[25] As such, it was reasonable for the 2010 Physical Disability Board of Review to conclude that the VA psychologist would not have based a finding of PTSD on the service stressor.

 Plaintiff also argues that the 2010 Physical Disability Board of Review improperly speculated that the discrepancies in Mr. Petri's symptoms could indicate exaggeration. The 2010 Physical Disability Board of Review conclusion, however, must be read in context. As the 2010 Physical Disability Board of Review noted:

> The Board's default posture regarding the accuracy of history and severity of symptoms as reported by the applicant in the medical record is one of acceptance as factual evidence. The Board however

must assign limitations to that principle in some cases. If there are provider notes questioning the accuracy of the history, or logical inconsistencies of the reported and subjective history with the overall evidence, the Board must take these into account in arriving at its recommendations. It was judged that such factors were evidenced in this case and they are elaborated below. The Board hastens to add that such factors are treated as variable, with the emphasis remaining on achieving a "fair and equitable" (DoDI 6040.44) recommendation.

Following this statement in its decision, the 2010 Physical Disability Board of Review proceeded to highlight many of the various inconsistencies among Mr. Petri's symptoms

---

**25.** Although not addressed in the Amended Administrative Record, the VA lists the criterions for PTSD as follows:

**Criterion A: stressor**
The person has been exposed to a traumatic event in which both of the following have been present:
1. The person has experienced, witnessed, or been confronted with an event or events that involve actual or threatened death or serious injury, or a threat to the physical integrity of oneself or others.
2. The person's response involved intense fear, helplessness, or horror. Note: in children, it may be expressed by disorganized or agitated behavior.

**Criterion B: intrusive recollection**
The traumatic event is persistently re-experienced in at least **one** of the following ways:
1. Recurrent and intrusive distressing recollections of the event, including images, thoughts, or perceptions. Note: in young children, repetitive play may occur in which themes or aspects of the trauma are expressed.
2. Recurrent distressing dreams of the event. Note: in children, there may be frightening dreams without recognizable content.
3. Acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and dissociative flashback episodes, including those that occur upon awakening or when intoxicated). Note: in children, trauma-specific reenactment may occur.
4. Intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.
5. Physiologic reactivity upon exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.

**Criterion C: avoidant/numbing**

Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by at least **three** of the following:
1. Efforts to avoid thoughts, feelings, or conversations associated with the trauma.
2. Efforts to avoid activities, places, or people that arouse recollections of the trauma.
3. Inability to recall an important aspect of the trauma.
4. Markedly diminished interest or participation in significant activities.
5. Feeling of detachment or estrangement from others.
6. Restricted range of affect (e.g., unable to have loving feelings).
7. Sense of foreshortened future (e.g., does not expect to have a career, marriage, children, or a normal life span).

**Criterion D: hyper-arousal**
Persistent symptoms of increasing arousal (not present before the trauma), indicated by at least **two** of the following:
1. Difficulty falling or staying asleep
2. Irritability or outbursts of anger
3. Difficulty concentrating
4. Hyper-vigilance
5. Exaggerated startle response

**Criterion E: duration**
Duration of the disturbance (symptoms in B, C, and D) is more than one month.

**Criterion F: functional significance**
The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning.
*DSM Criteria for PTSD*, Department of Veterans Affairs (July 5, 2007) http://www.ptsd.va.gov/professional/pages/dsm-iv-tr-ptsd.asp (emphasis in original).

including his apparently unreliable, self-reported symptoms, his use of consistent, complex terminology from one interview to another, suggesting over-endorsed symptoms, his inconsistent psychiatric test scores, and his apparently competent, non-flight related daily activities. The 2010 Physical Disability Board of Review also noted the VA psychologist's statements from 2006 that, "Mr. Petri's occupational functioning and social functioning appear severely impaired due to his PTSD symptoms. However, it is possible that his level of impairment is somewhat less severe due to his tendency to over-endorse symptoms," and that Mr. Petri's Minnesota Multiphasic Personality Inventory—2 score should be disregarded because of over-endorsement. In the context of the record before the 2010 Physical Disability Board of Review and this court, it appears that the 2010 Physical Disability Board of Review was expressing reasonable concerns leading to its final decision which was based on substantial evidence. The 2010 Physical Disability Board of Review did not act arbitrarily or capriciously.

*Underemployment*

Contrary to plaintiff's argument, the 2010 Physical Disability Board of Review did consider the VA psychologist's findings from 2006 as to Mr. Petri's level of employment, as well as references to Mr. Petri's ability to work, although not in flight-related employment, discussed in the medical reports. For instance, the 2010 Physical Disability Board of Review noted that the VA psychological examination revealed internal discrepancies in plaintiff's appearance as compared to his employment status. As mentioned in the 2010 Physical Disability Board of Review's findings, the 2006 VA psychologist described plaintiff as, "disheveled in appearance. His hair was messy. He had a several day beard growth. His pants appeared to be pajama bottoms. His shoes were covered with paint spots. His eye contact was poor." The 2010 Physical Disability Board of Review concluded that it was "difficult to reconcile this picture with the history in the same exam that he was employed daily." Indeed, the VA psychologist stated in his report: "He [Mr. Petri] says he generally has done a good job at work. He only works 1–2 hours a day at UPS [United Parcel Service] and primarily works there for the health care benefits. He has not had any disciplinary problems there. He has yelled at coworkers, but has never been disciplined for that." Mr. Petri's work-related aggression, as revealed in the VA psychologist's report, although not cited directly by the 2010 Physical Disability Board of Review, also had occurred prior to Mr. Petri's entry into military service. As Mr. Petri explained to the VA psychologist, he was fired from a civilian job for not showing up a few times, got extremely angry when he was fired from another job because he would not clean dishes fast enough, although he says he controlled his temper, and that he felt "a lot of annoyances" with his employees in a mortgage business he had co-owned. There is no indication that Mr. Petri's work-related aggression was connected to his PTSD, in fact, Mr. Petri performed "above average" while in the Air Force. Indeed, the VA psychological examiner noted that Mr. Petri "appears to have had problems with irritability most of his life," and Mr. Petri told the psychologist, "I've always had a low tolerance for other people and their lack of competence." Even if Mr. Petri's anger issues were connected to his [deleted], there was no indication that service-related PTSD interfered with his ability to work at United Parcel Service.

As the 2010 Physical Disability Board of Review explained, "[t]here is nothing in the record which suggests that the CI [covered individual] was under-employed on the basis of psychiatric impairment." Rather, according to the 2006 VA psychologist's report, Mr. Petri had chosen to work in order to receive health care benefits for which he only had to work 1–2 hours per day. Furthermore, the 2006 VA psychologist's "note also documented that there had been no missed work." While Mr. Petri's last outpatient note "predicted a 'serious employment handicap,'" the 2010 Physical Disability Board of Review noted that Mr. Petri, nevertheless, was able to return to work at United Parcel Service, his prior civilian employer, within two to three months after separation. As such, the 2010 Physical Disability Board of Review established a rational connection between the

evidence and its conclusion as to Mr. Petri's continued capability for employment.

*Social Impairment*

After conducting a thorough examination of the records, based on those records, the 2010 Physical Disability Board of Review reasonably found there was not significant enough social impairment meriting a disability rating above 10%. The 2010 Physical Disability Board of Review noted a number of discrepancies among Mr. Petri's various medical reports regarding his social activities. To the VA psychological examiner, in 2006, Mr. Petri reported that he " 'spent most of his time in bed' and was socially withdrawn during the MEB period," which, the 2010 Physical Disability Board of Review concluded, "does not correlate with numerous outpatient notes documenting his daily activities nor with his final training report on the eve of separation," which stated that from May 23, 2005 through March 2, 2006, Mr. Petri's performance "on daily sorties, academics, and EPQs was above average." The 2010 Physical Disability Board of Review decision states, "[t]he only MEB documentation of any social withdrawal was found in the last outpatient Behavioral Health prior to separation." An October 4, 2005 medical report, the Narrative Summary, cited by the 2010 Physical Disability Board of Review, also stated that his "symptoms have improved since getting off the flight line. He is social with others and is going out on the weekends to some degree. He is golfing on the weekends." As the 2010 Physical Disability Board of Review identified, the 2005 Narrative Summary stated that Mr. Petri's social and industrial impairment were "[m]ild, good functioning prior to flying school and in between flying school," but that his military impairment was "[m]arked. Pt [patient] will have a high probability for flair up of symptoms if exposed to harsh environment, which may be encountered in deployed setting." And while "good social functioning was documented" in the Narrative Summary, "social anxiety and 'borderline' social functioning were documented on the final outpatient note," a discrepancy pointed out by the 2010 Physical Disability Board of Review.

The 2010 Physical Disability Board of Review further considered the VA psychological examiner's documentation of Mr. Petri's social functioning in 2006, wherein Mr. Petri reported he had lost interest in golf and other recreational activities and was not close to anyone, including his family. Yet, the 2010 Physical Disability Board of Review stated, "[t]here is no documentation that the CI [covered individual] was intolerant of public places or that he was totally isolating at home." Indeed, although the 2010 Physical Disability Board of Review did not cite the VA psychologist's report for the following notation, the VA psychologist questioned Mr. Petri's self-reported symptoms and, subsequently, his overall findings:

> Although Mr. Petri clearly has mental health problems, the validity of the conclusions of this examination is reduced due to a number of factors. As a result, there is some degree of uncertainty with regard to the nature and extent of Mr. Petri's mental health problems. This is due to a number of factors. First, the veteran over-endorsed items on the MMPI–2 [Minnesota Multiphasic Personality Inventory—2]. He describes somewhat of a contentious [sic] relationship with the Air Force previously over benefits, and it is possible that he is attempting to make it more likely that he will obtain benefits in this manner. Second, he declined to discuss alcohol or drug use issues. It is possible that under some circumstances severe alcohol or drug abuse could be exacerbating his mental health problems or producing some of the symptoms that he described. Third, his presentation and history are somewhat atypical. [Deleted].

*Veterans Administration Schedule for Rating Disabilities*

Plaintiff argues that the preponderance of the evidence standard used by the Air Force in determining disability ratings conflicts with the Veterans Administration Schedule for Rating Disabilities, which requires the resolution of reasonable doubt in the service member's favor, and that the 2010 Physical Disability Board of Review failed to apply the correct Veterans Administration Schedule for Rating Disabilities criteria in evaluat-

ing the percentage of Mr. Petri's disability. *See* Veterans Administration Schedule for Rating Disabilities § 4.3 (2010) ("It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant.").

The United States Court of Appeals for Veterans Claims has explained with respect to cases in that court:

> A veteran is entitled to the "benefit of the doubt" when there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of a matter. *See* 38 U.S.C.A. § 5107(b) (West 1991); *Gilbert [v. Derwinski]*, 1 Vet.App. [49] at 53–55 [ (1990) ]. If a fair preponderance of the evidence supports a veteran's claim, the claim will be granted and the rule has no application. *Gilbert*, 1 Vet.App. at 55. Similarly, if a fair preponderance of the evidence is against a veteran's claim, the claim will be denied, and the rule has no application. *Id.* Where the Board makes a finding of fact adverse to a claimant, it has necessarily concluded that the fact is established by a fair preponderance of the evidence.

*Hayes v. Brown*, 5 Vet.App. 60, 69–70 (1993), *appeal dismissed*, 26 F.3d 137 (Fed.Cir. 1994); *see also Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed.Cir.2009) ("by statute and regulation, the veteran is given the 'benefit of the doubt' 'regarding any issue material' to the veteran's claim 'when there is an approximate balance of positive and negative evidence.' 38 U.S.C. § 5107(b)"); *Schoolman v. West*, 12 Vet.App. 307, 311 (1999) (stating that the benefit of the doubt doctrine applies only where the evidence is in equipoise).

In its recommendation, the 2010 Physical Disability Board of Review stated that the Board members agreed that the balance of the evidence did not rationally support a 50% disability rating because: "too much speculation was required to concede a 50% perma-

nent rating recommendation in this case and that the balance of the evidence did not rationally support it." Also, alternatively, with respect to the lower, 30% disability rating, the 2010 Physical Disability Board of Review stated that "[a]s many conflicting opinions as possible were resolved in favor of the CI [covered individual] when it was logically supportable to do so. The Board failed, on balance, to find adequate reasonable doubt favoring the CI [covered individual]." In short, the 2010 Physical Disability Board of Review found that the evidence was not in equipoise, and its finding is reasonable given the numerous inconsistencies in Mr. Petri's medical reports and the VA psychologist's own doubts as to the sincerity of Mr. Petri's self-reporting.

In terms of the Veterans Administration Schedule for Rating Disabilities § 4.130 ratings criteria, the standards for ratings of 10%, 30%, and 50% are:

> 50%—Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short—and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

> 30%—Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

> 10%—Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during peri-

ods of significant stress, or; symptoms controlled by continuous medication.

Veterans Administration Schedule for Rating Disabilities § 4.130.

Plaintiff asserts that that the 2010 Physical Disability Board of Review incorrectly applied a standard of "significant occupational impairment," to a potential 50% PTSD rating for Mr. Petri when it stated, "[a]lthough some degree of social impairment was established, there is no convincing evidence that that there was significant occupational impairment from PTSD." However, plaintiff takes the 2010 Physical Disability Board of Review's statement out of context. When read in connection with the preceding sentences, it is clear that the 2010 Physical Disability Board of Review correctly identified the Veterans Administration Schedule for Rating Disabilities standard for a 50% rating:

> The Board deliberated at length regarding the most reasonable and fair permanent rating recommendation for PTSD in this case. The general description for a 50% rating as stated in § 4.130 is "occupational and social impairment with reduced reliability and productivity." Although some degree of social impairment was established, there is no convincing evidence that there was significant occupational impairment from PTSD.

While the 2010 Physical Disability Board of Review mentioned "significant occupational impairment," it did so in the context of the entire rating standard for a 50% PTSD disability rating. As demonstrated above, each of the 50%, 30%, and 10% ratings begin— "Occupational and social impairment...." Thereafter, each rating gives examples of the extent and severity of the "occupational and social impairment" necessary to meet that rating. Contrary to plaintiff's assertion that "[t]he PDBR should have looked at if there was **any degree** of occupational and social impairment with reduced reliability and productivity," there had to be more than just "any degree of" impairment to merit a 50%, 30%, or 10% rating (emphasis in original).

The 2010 Physical Disability Board of Review did not display an intent to use the Veterans Administration Schedule for Rating Disabilities examples as a checklist although it found that only four of the nine examples listed in the Veterans Administration Schedule for Rating Disabilities for a 50% rating were reported by Mr. Petri. The 2010 Physical Disability Board of Review explicitly stated that the Veterans Administration Schedule for Rating Disabilities includes a "list of features of symptoms as examples for" each level of impairment. Indeed, the Board conducted an extensive examination of Mr. Petri's complex medical files, including reviewing all of the symptoms he reported and the observations recorded personally by medical personnel. The 2010 Physical Disability Board of Review reasonably concluded that Mr. Petri did not exhibit the severe impairments of mood and mind, six months after separation, the period of time pertinent to the Board's permanent rating decision (i.e., following removal from the Temporary Disability Retired List), warranting a 50% rating.

Plaintiff further contests the failure of the 2010 Physical Disability Board of Review to award Mr. Petri a 30% disability rating. The 2010 Physical Disability Board of Review stated that a 30% recommendation could be warranted if:

> **a)** as previously elaborated, all concessions are made in favor of the CI regarding the links in the chain of Service connected psychiatric impairment; **b)** most or all reported symptoms are accepted at face value with no significant lowering of probative value, favorably conceding most or all of the contradictory issues discussed above; and, **c)** VASRD [Veterans Administration Schedule for Rating Disabilities] § 4.3 (reasonable doubt) is liberally and repeatedly invoked.

Plaintiff insists that the "links" issue at (a), immediately above, concerns whether Mr. Petri's PTSD was service-related and is not relevant to a determination of the degree of Mr. Petri's disability. Plaintiff also argues that the reasonable doubt standard is to be used if the evidence is in equipoise, such that a "liberal" use of the standard, indicated by the 2010 Physical Disability Board of Review at (c), immediately above, violates the law requiring it to be applied in all cases. Con-

trary to plaintiff's argument, it appears that the "links" factor at (a), to which the 2010 Physical Disability Board of Review refers in its decision, concerns its discussion at the beginning of the recommendation:

> The Board must therefore make a chain of increasingly tenuous concessions to arrive at the conclusion that a permanent Service disability rating can be fairly based on the severity of symptoms cited by the CI at six months after separation. It must first concede that [deleted] for the first time from the incidents in 2002, triggering the cascade to a final diagnosis of PTSD. Otherwise the EPTS adjudication by the IPEB would be more difficult to refute. Psychiatric support for this phenomenon is not resolute. The Board must then concede that a completely resolved stress disorder evolved into a full blown PTSD condition two years later by virtue of less severe stressors, reminiscent of a more severe stressor which, in turn, was reminiscent of the definitive [deleted]. It must further accept the initial Service trauma as the *de facto* Criterion A stressor for the MEB's PTSD diagnosis, since all of the symptoms invoked in the narrative summary (NARSUM) to satisfy the DSM–IV diagnostic criteria for PSTD were directly linked to the first IP experience. Finally, the Board must conclude that six months after separation the PTSD symptoms were now attached [deleted] and concede that all of the psychiatric impairment remains attached to the Service disability rating.

(emphasis in original).

Indeed, a close examination of this statement by the 2010 Physical Disability Board of Review demonstrates that it is connected to the factor at (b), described in the 2010 Physical Disability Board of Review's list, included two paragraphs above, clarifying the 2010 Physical Disability Board of Review's explanation for a 30% rating disability, namely, accepting Mr. Petri's self-reported symptoms "at face value." The statement explains that the 2010 Physical Disability Board of Review determined that a series of concessions regarding the links between the flight instructor's behavior and the [deleted] had to be reached before the Physical Dis-

ability Board of Review could give great weight to the symptoms reported by Mr. Petri at his six month VA examination in late 2006. This statement indicates that without such concessions, the 2010 Physical Disability Board of Review could not "accept[ ] at face value with no significant lowering of probative value," Mr. Petri's self-reported symptoms to the VA psychological examiner because there were a number of contradictory issues with Mr. Petri's self-reporting. As to the Veterans Administration Schedule for Rating Disabilities § 4.3 reasonable doubt standard, it appears that the 2010 Physical Disability Board of Review was emphasizing that the evidence was conflicting and the discrepancies great, such that application of the standard could not support a finding of equipoise. As the 2010 Physical Disability Board of Review explained, even resolving the conflicting opinions in favor of plaintiff when the evidence logically supported such liberal construction, still, there was not enough evidence in Mr. Petri's favor, or merely in equipoise, to support a recommendation for the higher 30% rating.

*Weight of VA Rating Determination*

As to Mr. Petri's assertion that the 2010 Physical Disability Board of Review failed to give proper weight to the VA rating determination, DoDI 6040.44, enclosure 3, paragraph 5(a)(4) states:

> If the Service member indicates that a DVA disability award has been made.... The Military Departments will obtain the DVA rating determinations issued on behalf of the former Service member. Once obtained, the PDBR should compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the DVA rating was awarded within 12 months of the Service member's separation.

Plaintiff's VA rating here was not awarded within 12 months of his separation, indicating that the 2010 Physical Disability Board of Review need not "compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disabili-

ty rating." The VA rating was issued on March 27, 2007, but Mr. Petri had been separated on March 13, 2006, more than a year prior, although only by a few days. The 2010 Physical Disability Board of Review, nevertheless, gave extensive attention to the VA examination reports upon which the VA rating was based, taking into consideration the variances between the VA examination reports and other medical records available for the Physical Evaluation Board reviews in 2005 and 2006. Furthermore, the 2010 Physical Disability Board of Review discussed the 50% rating assigned by the VA:

> The VA rating decision (VARD) derived its 50% determination from this exam [the VA psychiatric exam], citing § 4.130 criteria rather than application of § 4.129. Although the VARD documented some of the examiner's reservations, it fully applied the stated symptoms and history to the § 4.130 criteria it cited for a 50% rating. The Board will focus as much as possible on the objective evidence from the Service and VA records in correlating the degree of impairment with VASRD [Veterans Administration Schedule for Rating Disabilities] § 4.130 standards. As previously stated and for reasons just elaborated [discrepancies and the VA examiner's own notation that Mr. Petri may have over-endorsed symptoms], the Board cannot premise its permanent PTSD rating recommendation solely on inferring impairment at six months from the subjective and speculative evidence contained in the VA rating examination.

Thus, although the 2010 Physical Disability Board of Review was not required to, the 2010 Physical Disability Board of Review discussed the rating assigned by the VA and thoroughly reviewed the basis for the VA's rating determination in making its recommendation.

## CONCLUSION

While the 2010 Physical Disability Board of Review corrected plaintiff's 2006 records to reflect retroactive placement on the 2006 Temporary Disability Retired List, it also reasonably recognized that a physical evaluation of Mr. Petri years later in 2010 would not have reflected Mr. Petri's state of mental or physical health six months after his 2006 separation, the time period pertinent to the 2010 Physical Disability Board's review and permanent disability rating recommended for Mr. Petri. Similarly, although the statute at 10 U.S.C. § 1214 requires a hearing before separation, which, in Mr. Petri's case, occurred in 2006, the requirement would not have been accomplished by a hearing conducted in 2010. Moreover, the plaintiff initialed Air Force Form 1180, "Action on Physical Evaluation Board Findings and Recommended Disposition," indicating he was satisfied with the 2006 decision of the Formal Physical Evaluation Board.

Plaintiff has been given many opportunities to present his case, before the 2005 Informal Physical Evaluation Board, the 2006 Formal Physical Evaluation Board, and the 2010 Physical Disability Board or Review. His records have been reviewed many times and Mr. Petri has had an attorney to assist him to present his case before this court. Most recently, the 2010 Physical Disability Board of Review reasonably and thoroughly analyzed the best evidence available regarding Mr. Petri's state of health in 2006. The 2010 Physical Disability Board of Review did not act arbitrarily, capriciously, or contrary to law. For the foregoing reasons, the defendant's motion for judgment upon the Administrative Record is **GRANTED.** The plaintiff's cross-motion for judgment upon the Administrative Record is **DENIED,** and plaintiff's complaint is **DISMISSED.** The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**